IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
MIDLAND NATIONAL LIFE           )
INSURANCE COMPANY,              )
                                )
                Plaintiff,      )    CIVIL ACTION
                                )
v.                              )    No.  08-1367-MLB
                                )
QUANETT JOHNSON-MARIN, et al.,  )
                                )
                Defendants.     )
                                )
```

### MEMORANDUM AND ORDER REGARDING ATTORNEY FEES

Before the court are the following:

1. Attorney Larry Ehrlich's motion for approval of attorney fees and expenses (Doc. 102);

2. Motion to determine attorney's lien (Doc. 106); and

3. Attorney's lien (Doc. 107).

The court held a hearing on July 9, 2012. For the following reasons, Mr. Ehrlich's motion for fees is granted, in part. His motion for expenses is granted in its entirety.

Counsel are familiar with the somewhat protracted course of this case; therefore, a summary will suffice. A reader not familiar with the case should review the court's memorandum decision of January 9, 2012 (Doc. 98).

This case was filed as an interpleader action on November 19, 2008. However, as Mr. Ehrlich explained at the hearing and as shown by his time sheets, Mr. Ehrlich's involvement began in February 2008, when he first learned that Quanett Johnson had sold the annuities to Henderson. Mr. Ehrlich tried, without success, to enlist the

assistance of the Sedgwick District Attorney. He also began discussions with various persons, including counsel for Midland, which eventually filed the interpleader. Mr. Ehrlich entered his appearance along with counsel for the other parties and the case began moving through the discovery process.

In August 2009, Mr. Ehrlich began settlement discussions. Mr. Ehrlich's time entry of August 21, 2009 states: "Conversation Kraft [one of Henderson's lawyers] Re: settlement offer of even split." Mr. Ehrlich's time sheets reflect additional settlement conversations and conferences during September and October, 2009. However, when the settlement was presented to the court for approval on October 19, 2009, the court declined to approve it.[1]

---

[1]The proposed settlement, Doc. 31, provided:

> These two defendants [Ramirez and Henderson] will equally divide the accrued annuity payments held in trust by plaintiff [Midland].
>
> Plaintiff will make all future monthly annuity payments to defendant Henderson. Defendant Henderson will then forward a payment to defendant Ramirez equal to one half of the monthly annuity payment received from plaintiff. This arrangement will continue for the life of the annuities.
>
> Defendant Henderson will pay $5,500.00 to plaintiff for attorney fees and expenses.
>
> Plaintiff will forgo their claim for the remaining attorney fees and expenses.

Evidence will be presented at the hearing of this motion in order for the Court to make its independent evaluation of whether the settlement is reasonable, fair and in the best interests of the minors. The evidence will also include a request for an allowance of reasonable attorney fees and reasonable expenses advanced by attorneys for defendant Ramirez to be paid from one-half of the accrued annuity payments received by defendant Ramirez.

-2-

There followed additional discovery and proceedings before the magistrate judge. The parties filed motions for summary judgment (Docs. 52-62) which the court denied on October 1, 2010 (Doc. 63). The pretrial order was filed on February 8, 2011 (Doc. 71) and a bench trial was conducted on August 2 and 31, 2011. After additional briefing, the court filed its memorandum decision on January 9, 2012 (Doc. 98). Henderson sought reconsideration which the court denied on February 7, 2012 (Doc. 103). The court waited for Henderson to appeal, but it did not do so. On April 13, 2012, the court appointed attorney JoLynn Oakman as guardian ad litem for the Hernandez children (Doc. 105). By letter of May 3, 2012, counsel for Midland announced that it will forego any interest in the funds it deposited with the clerk, which currently total $114,205.08.

The first order of business is to resolve the matter of Mr. Ehrlich's fees and then, with Ms. Oakman's assistance, develop a plan for disbursing the remainder of the funds (less Ms. Oakman's fee) for the benefit of the children, who currently reside in Mexico with their mother.

Mr. Ehrlich has supported his claim by two methods: (1) his contingent fee agreement with Rito Duque Ramirez (Doc. 107, Ex. A) and (2) his time sheets. Applying the 40% contingent fee agreement, Mr. Ehrlich's calculated fees (not including expenses) are $45,069.40 (Doc. 107). Using the time sheets, the fees (not including expenses) are $40,600.

Mr. Ehrlich cites two cases for the proposition contingent fee

contracts on behalf of a minor are legal in Kansas so long as they are reasonable: Grayson v. Pyles, 184 Kan. 116, 334 P.2d 341 (1959) and Baugh and Baugh, 25 Kan. App. 2d 871, 973 P.2d 202 (1999). Grayson involved a contingent fee agreement in an action to collect child support payments. Baugh concerned a contingent fee agreement in an action involving the wrongful death of a child. Although the factual situations in Grayson and Baugh differ from this case, both support the legality of Mr. Ehrlich's contingent fee agreement and this court has no reason to find otherwise. The key factor, as Mr. Ehrlich observes, is the reasonableness of the fee, which is the same factor the court notes in Baugh. 25 Kan. App. 2d at 877.

The Kansas Supreme Court has established a standard methodology for determining reasonableness. In Johnson v. Westhoff Sand Co., 281 Kan. 930, 135 P.3d 1127 (2006), the court stated:

> In determining the reasonableness of an attorney fee, e.g., as set forth in K.S.A. 40-256, the factors in Rule 1.5(a) (2005 Kan. Ct. R. Annot. 397) of the Kansas Rules of Professional Conduct should be considered. City of Wichita v. BG Products, Inc., 252 Kan. 367, 374, 845 P.2d 649 (1993). The rule provides:
>
>> "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>> (3) the fee customarily charged in the locality for similar legal services;
>> (4) the amount involved and the results obtained;
>> (5) the time limitations imposed by the client or by the circumstances;
>> (6) the nature and length of the professional relationship with the client;
>> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

>    (8) *whether the fee is fixed or contingent.*" (2005
>         Kan. Ct. R. Annot. 397.) (Emphasis added.)

(28 Kan. at 940-41). The court also observed that the amount of the fee is discretionary and that although the KRPC 1.5(a) factors must be considered, no one factor controls. A fee agreement must be considered but it is not dispositive of a reasonable fee. The methodology set out in Johnson has been the law in Kansas for a long time. See Hall v. Hamilton, 233 Kan. 880, 886, 667 P.2d 350 (1983) and Barnes v. Mid-Continent Casualty Co., 192 Kan. 401, 405, 388 P.2d 642 (1964). The Tenth Circuit recognized the Kansas methodology in Beck v. Northern Natural Gas Co., 170 F.3d 1018, 1025 (10th Cir. 1999).

The court will now consider each of the Rule 1.5(a) factors.

(1) Mr. Ehrlich's time sheets show a total of 209.65 hours spent on the case between February 2008 and May 2012. The court has carefully reviewed the entries and generally finds the time expended to be reasonable. This was a novel case in several respects, e.g., the legal issues surrounding Johnson's sale of the annuities to Henderson and the validity of Henderson's claims to the annuities. The court's rejection of the settlement resulted in substantial additional work. Mr. Ehrlich is a seasoned attorney which he demonstrated in the skill he exercised in handling the case. The court has no reason to believe any other lawyer could have done better.

(2) There is no evidence that Mr. Ehrlich's involvement precluded his employment in any other case.

(3) Mr. Ehrlich's initial hourly fee of $150 was raised to $200

-5-

in December 2008. Mr. Ehrlich has not explained his reason for raising the fee. As a result, the majority of his work, 183 hours, was billed at $200 per hour. Based on the court's knowledge of hourly fees in Wichita for work in federal court, both hourly rates are reasonable.

(4) The "amount involved and results obtained" factor is somewhat difficult to apply in this case. To the extent Mr. Ehrlich supports his claim by the contingent fee agreement, this was not a "usual" contingent fee case in comparison with a medical negligence or a products liability case where the plaintiff is required to prove both liability and damages and, in some cases, run the risk of Kansas' comparative fault law which can reduce or eliminate even stipulated damages. Mr. Ehrlich was not required to advance substantial sums for investigation, to locate and retain expert witnesses and to engage in deposition discovery. The "amount" of maximum recovery was the sum remaining to be paid out by Midland.[2]

Consideration of the "results obtained" factor likewise places the court in a somewhat difficult situation. On the one hand, the court has nothing but praise for the overall way Mr. Ehrlich prosecuted this case. However, the "results obtained," i.e., recovery of all the remaining value of the annuities, cannot be attributed solely to the positions advanced by Mr. Ehrlich, e.g., Henderson's claimed violation of Kansas' Structured Settlement Protection Act,

---

[2]On March 1, 2012, Quanett Marin a.k.a. Johnson-Marin was charged in this court with mail fraud and money laundering (Case No. 6:12-CR-10047-JTM). She pled guilty on June 26 and will be sentenced on September 13, 2012. Presumably restitution will be ordered but the amount has not been determined. Whether restitution will be paid is, of course, quite another matter.

-6-

K.S.A. 60-461 2008 Supp.  See, also, the court's comments regarding Rito Duque Ramirez's position set forth in the memorandum decision (Doc. 98 at 17-18).

(5) No time limitations were imposed other than those which are customarily imposed by the court.

(6) The length of Mr. Ehrlich's relationship with Ramirez has been noted.  The nature of the relationship does not seem especially relevant except that the court is well aware that Ramirez, at times, has been difficult to deal with.

(7) Mr. Ehrlich's experience, reputation and ability already have been commented upon.

(8) Finally, Mr. Ehrlich responsibly kept track of his time in addition to the contingent fee contract.  The court attaches no particular significance to the fact that the claimed fees under the contingency fee agreement and time expended/hourly rate calculation are similar.

Applying these factors, there is no question that Mr. Ehrlich has earned a substantial fee for his services.  Although payment of his fee will reduce the amount of money available for the children, it is certainly arguable that without Mr. Ehrlich's efforts, the children would be receiving nothing at all.

But there are additional factors which are unique to this case. First, the settlement funds were intended for the benefit of the minor children and the reasonableness of Mr. Ehrlich's fee must be considered in light of the funds ultimately available to the children. Cases note the special role of the courts in matters involving minors. For example, in Salmeron v. U.S., 724 F.2d 1357, 1363 (9th Cir. 1983),

the court observed:

> It has long been established that the court in which a minor's claims are being litigated has a duty to protect the minor's interests. See, e.g., Thompson v. Maxwell Land Grant and Railway Co., 168 U.S. 451, 463, 18 S.Ct. 121, 125, 42 L.Ed. 539 (1897); **United States v. Reilly, 385 F.2d 225, 228 (10th Cir. 1967) ("With the interests of minors at stake, the trial judge had a special obligation to see that they were properly represented, not only by their own representatives but also by the court itself.")**. Thus, a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, e.g., Glover v. Bradley, 233 F. 721, 727 (4th Cir. 1916), even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem. See Thompson v. Maxwell Land Grant and Railway Co., 168 U.S. at 463, 18 S. Ct. at 125; Glover v. Bradley, 233 F. at 727. (Emphasis added).

The same duty of judicial investigation was found to exist in a more recent case, In re Abrams & Abrams, P.A., 605 F.3d 238, 293 (4th Cir. 2010)[3]:

---

[3]In remanding for a reasonableness analysis, the Abrams court admonished the district court to "look at the twelve factors first set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Abrams was decided on May 18, 2010. On August 16, 2010, the Tenth Circuit decided Anchonodo v. Anderson, Crenshaw & Associates, 616 F.3d 1098. The court observed at pages 1103-04:

> The Supreme Court's very recent decision in Perdue [v. Kenny A. ex. rel. Winn, 130 S. Ct. 1662, 1673 (2010)] only confirms our reluctance to disturb a presumptively valid lodestar fee determination on the basis of a conclusory objection that Johnson factors were not discussed. In Perdue the Court appears to significantly marginalize the twelve-factor Johnson analysis, which it discounts as just "[o]ne possible method" that "gave very little actual guidance" and, due to its "series of sometimes subjective factors[,] ... produced disparate results." 130 S. Ct. at 1671-72 (quotation omitted). The Perdue Court clearly embraces the lodestar approach as the preferable alternative to the Johnson analysis, noting that the lodestar approach "achieved dominance in the federal courts after ... Hensley, Gisbrecht v. Barnhart, 535 U.S. 789, 801[, 122 S. Ct. 1817, 152 L. Ed. 2d 996] ... (2002)," and has "become the guiding light of our fee-shifting jurisprudence." 130 S. Ct. at 1672 (also noting that

-8-

The simpler standard of "reasonableness" is one that Congress and many courts have adopted. For instance, in the fee-shifting context under 42 U.S.C. § 1988(b), which applies to certain civil rights suits, a "court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." 42 U.S.C. § 1988(b) (emphasis added). See also Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978) (evaluating fee-shifting attorney fee for reasonableness). Nor is the reasonableness standard limited to the fee-shifting context. As we noted in Bergstrom v. Dalkon Shield Trust (In re A.H. Robins Co.), "the law of this circuit has long been clear that federal district courts have inherent power and an obligation to limit attorneys' fees to a reasonable amount." 86 F.3d 364, 373 (4th Cir. 1996). In particular, "[t]he district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established." Allen v. U.S., 606 F.2d 432, 435 (4th Cir. 1979). Here too the review of fee arrangements is for reasonableness.

Indeed, it is difficult to imagine why any different standard would be warranted. In a case like this involving a minor or disabled individual, a district court plainly enjoys discretion to protect those who come in front of it. In general, "infant[s] and other incompetent parties are wards of any court called upon to measure and weigh their interests." Dacanay v. Mendoza, 573 F.2d 1075, 1079 (9th Cir. 1978). As a result, "[i]t has long been established that the court in which a minor's claims are being litigated has a duty to protect the minor's interests." Salmeron v. U.S., 724 F.2d 1357, 1363 (9th Cir.1983). This duty is intended to protect those who may be especially vulnerable to manipulation or who may be unable to protect themselves. Id.

---

"unlike the Johnson approach, the lodestar calculation is objective" and hence "produces reasonably predictable results") (quotations omitted). We do not suggest that the Johnson factors have become irrelevant; Perdue did not overrule Hensley's allowance that under appropriate circumstances they may be useful in determining subsequent ad hoc adjustments to the lodestar, see Hensley, 461 U.S. at 434 & n. 9, 103 S. Ct. 1933 (also noting, however, "that many of [the Johnson] factors usually are [already] subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"). But, after Perdue, it has only become clearer that the lodestar determination is primary and that the propriety of such a determination is not automatically called into doubt merely because the trial court did not expressly discuss the Johnson factors.

-9-

>  Integral to this protective judicial role is ascertaining whether attorney fee agreements involving minors or incompetents are reasonable. "Independent investigation by the court as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest is required." <u>Dean v. Holiday Inns, Inc.</u>, 860 F.2d 670, 673 (6th Cir. 1988); <u>Cappel v. Adams</u>, 434 F.2d 1278, 1280 (5th Cir. 1970) (same; noting "the obvious possibilities of unfair advantage"). Moreover, the public reputation of the profession would deservedly suffer if attorneys were seen to be gouging those least able to fend for themselves. Consistent with this charge, the local rules of the Eastern District of North Carolina state that in approving a settlement, "the court shall approve or fix the amount of the fee to be paid to counsel for the minor or incompetent parties." E.D.N.C.L.R. 17.1(c).

Second, as Ms. Oakman noted at the hearing, the funds available to the children already have been reduced by the $27,969 fee awarded to the lawyers who handled the workers compensation case in North Carolina.

Taking all these matters into consideration, the court concludes that a reasonable fee for Mr. Ehrlich's services is $ 28,000 plus his expenses of $1,534.58 for a total of $29,534.58. Ms. Oakman, the guardian ad litem, has been consulted and concurs.

IT IS SO ORDERED

Dated this <u> 8th </u> day of August 2012, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE